## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SEBASTIAN MELERO VALDEZ,

      Petitioner,

v.                                       No. CV 11-0897 JP/LAM

RAY TERRY, Warden,

      Respondent.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

**THIS MATTER** is before the Court on Petitioner's *Petition For Writ Of Habeas Corpus And Immediate Release From Custody (Doc. 1)* (hereinafter "Petition"), filed October 6, 2011. Respondent filed a response on November 14, 2011 [*Doc. 9*], and an amended response on November 15, 2011 [*Doc. 10*].[2] Petitioner filed a reply [*Doc. 11*] on November 23, 2011, and a notice of recently-decided authority on December 12, 2011 [*Doc. 13*]. Senior United States District

---

[1]**Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

[2]It appears that the amended response is identical to the original response, but is a better quality copy. The Court cites herein to the amended response. In his response, Respondent asks the Court to dismiss Attorney General Eric Holder and Adrian Macias from this action on the basis that they are improperly named as Respondents. [*Doc. 10* at 3 and 14]. On October 13, 2011, the Court entered an order directing the Clerk to change the docket to reflect that Ray Terry, Warden of the detention facility where Petitioner is being held, is the properly-named sole Respondent in this proceeding, and ordered service only on Respondent Terry. [*Doc. 4*]. Respondents Holder and Macias were terminated from the docket pursuant to that order, and Respondent's request is, therefore, moot.

Judge James A. Parker referred the claims raised in Petitioner's Petition [*Doc. 1*] to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 3*]. Having considered the parties' submissions, relevant law, and the record in this case, the undersigned, for the reasons set forth below, recommends that Petitioner's ***Petition For Writ Of Habeas Corpus And Immediate Release From Custody*** *(Doc. 1)* be **GRANTED.**

The Court has jurisdiction of this § 2241 petition because Petitioner was confined in New Mexico at the time he filed the petition. *See* Petition [*Doc. 1*] at 3; *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies only in one district: the district of confinement."); *United States v. Scott*, 803 F.2d 1095, 1096 (10th Cir. 1986) ("A § 2241 petition for a writ of habeas corpus must be addressed to the federal district court in the district where the prisoner is confined.").

### Factual and Procedural Background

The following facts are uncontested by the parties. Petitioner is a citizen of Mexico who was granted lawful permanent resident status on March 16, 1991. [*Doc. 1* at 3]. On October 14, 1994, Petitioner was convicted of illegal investment contrary to Texas state law, and was sentenced to ten years of confinement as a result of that conviction. *Id.* at 5. Petitioner alleges that he served ten years of supervised probation, and was not confined, for that conviction. *Id.* On July 21, 2010, Petitioner was convicted of two counts of receiving and transferring a stolen vehicle contrary to New Mexico law, and was sentenced to three years of supervised probation. *Id.* Petitioner was not confined following the July 21, 2010 conviction. *Id.* On September 17, 2011, Petitioner was arrested and taken into Immigration and Custom Enforcement (hereinafter "ICE") custody. This arrest occurred more than a year after Petitioner's conviction and sentence. *Id.* He is currently

being held at the Otero County Processing Center. *Id.* at 3 and 5. Petitioner is being detained under the provisions of 8 U.S.C. § 1226(c), which ICE alleges subjects Petitioner to mandatory detention. *Id.* at 3 and 5-6.

Petitioner contends that his mandatory detention is unlawful for two reasons. First, Petitioner contends that the mandatory detention provision of § 1226(c) does not apply to him because he was only in custody for a short period of time following his arrest, and was not taken into custody following either of his convictions. [*Doc. 1* at 4 and 6-8]. Second, Petitioner contends that the mandatory detention provision of § 1226(c) does not apply to him because he was taken into ICE custody more than a year after his release from pre-conviction custody, and Petitioner contends that § 1226(c) applies only to persons taken into custody immediately after their release. *Id.* at 4 and 8-9. Petitioner notes that there is a Bureau of Immigration Appeals (hereinafter "BIA") decision holding that pre-conviction detention is sufficient to trigger mandatory detention under § 1226(c) (*Matter of Kotliar*, 24 I. & N. Dec. 124 (BIA 2007)), and a BIA decision holding that ICE does not have to detain a person immediately after release from criminal custody for mandatory detention under § 1226(c) to apply (*Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001)). [*Doc. 1* at 4 and 7-8]. Petitioner contends, however, that these cases are not entitled to deference by this Court. *Id.* at 7-9. Petitioner, therefore, asks the Court to issue an order finding that the mandatory detention provision of § 1226(c) does not apply to him and to order the Executive Office for Immigration Review to set a bond hearing under § 1226(a) within a set time period. [*Doc. 11* at 12] and [*Doc. 1* at 1 and 10]. In response, Respondent contends that ICE has lawfully detained Petitioner pursuant to § 1226(c) and the Court should defer to the BIA decisions interpreting the statute as requiring mandatory detention under these circumstances. [*Doc. 10* at 2-14].

*Analysis*

Section 1226(a) governs the detention of an alien pending a decision on whether the alien is to be removed from the United States, and provides that the Attorney General may release the alien on bond or conditional parole if he or she does not pose a danger to the community and is not a flight risk.  8 C.F.R. § 236.1(c)(8).  Section 1226(c)(1), however, mandates detention of specified criminal aliens, including those who are deportable for having committed offenses under § 1227(a)(2)(A)(ii), without an opportunity for a bond hearing before an immigration judge.  The United States contends that Petitioner is deportable for having committed offenses under § 1227(a)(2)(A)(ii), which states that an alien is deportable if he or she "at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct."  [*Doc. 10* at 1].  Petitioner does not contest this assertion.

Section 1226(c) mandates detention of specified criminal aliens "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense."  While there are exceptions to this mandatory detention provision in § 1226(c)(2), the parties do not contend that those exceptions apply to Petitioner.  *See* [*Doc. 10* at 3].  In *Matter of Kotliar*, the BIA held that release from pre-conviction detention was sufficient to satisfy the "when released" requirement when mandatory detention is triggered under § 1226(c) (24 I. &N. Dec. at 125), and in *Matter of Rojas*, the BIA held that an alien was subject to mandatory detention under § 1226(c), even though he was not immediately taken into custody by immigration officials when released from incarceration (23 I. &N. Dec. at 127) (alien had been released from incarceration two days earlier).

The Court first addresses Petitioner's contention that § 1226(c) does not apply to him because he was only in custody following his arrests, and was not placed into custody following his

4

convictions.  Petitioner contends that his detention prior to his convictions does not satisfy the "when released" requirement of § 1226(c) because that provision is not triggered until there is a conviction.  The Court agrees that § 1226(c) did not apply to Petitioner until his second conviction because § 1226(c) applies to Petitioner by virtue of § 1227(a)(2)(A)(ii), which requires that an alien be "*convicted* of two or more crimes involving moral turpitude" (emphasis added).  However, § 1226(c) explicitly states that, for specified criminal aliens, mandatory detention is required "when the alien is released, *without regard to whether the alien is released on parole, supervised release, or probation* . . . " (emphasis added).  Therefore, the triggering event for mandatory detention to apply was Petitioner's July 2010 conviction, and his release on probation following that conviction satisfies the "when released" requirement of § 1226(c).  The Court finds that, to the extent *Matter of Kotliar* holds that an alien is subject to mandatory detention under § 1226(c) based on release from custody from an arrest preceding a conviction, this holding is contrary to the plain language of § 1227(a)(2)(A)(ii) that an alien is not deportable until he or she is *convicted* of two or more crimes involving moral turpitude.  The Court, therefore, finds that Petitioner is not subject to mandatory detention under § 1226(c) based on his release from pre-conviction custody; however, Petitioner may be subject to mandatory detention based on his release on probation following his July 2010 conviction, if the other requirements of § 1226(c) are met.

Even though the Court finds that Petitioner may be subject to mandatory detention under § 1226(c) based on his release on probation following his July 2010 conviction, the Court next addresses Petitioner's contention that he is not subject to mandatory detention under § 1226(c) because he was not immediately detained when he was released from custody, but instead was detained more than a year after his release from custody.  Petitioner contends that the Court need not defer to the BIA's decision in *Matter of Rojas*, which holds to the contrary.  In determining

immigration laws, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 447-48 (1987) (quoting *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n.9 (1984)).  Under *Chevron*, the Court must first determine whether "Congress has directly spoken to the precise question at issue," and, if it has, the Court "must give effect to the unambiguously expressed intent of Congress."  467 U.S. at 842-43 (footnote omitted).  If Congress has been silent or used language that is ambiguous, then an agency's interpretation of the statute is given controlling weight unless it is arbitrary, capricious or manifestly contrary to the statute.  *Id.* at 843-44 (footnote omitted).  Deference is appropriate where "Congress delegate[s] rule making power to an agency and thereby [seeks] to rely on agency expertise in the formation of substantive policy."  *Jurardo-Gutierrez v. Greene*, 190 F.3d 1135, 1148 (10th Cir. 1999) (citation and internal quotation marks omitted).

While neither this Court nor the Tenth Circuit Court of Appeals has addressed whether the mandatory detention provision of § 1226(c) should apply to an alien who was not taken into custody immediately upon release, most federal district courts that have ruled on this issue have agreed that "when the alien is released" unambiguously means immediately after release from custody and have rejected the BIA's interpretation of § 1226(c).  *See Louisaire v. Muller*, 758 F.Supp.2d 229, 236 (S.D.N.Y. 2010) ("*Matter of Rojas*, however, is wrong as a matter of law and contrary to the plain language of the statute.  The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences for those *same offenses*, even if they are still serving part of their sentence . . . under parole, supervised release, or probation.") (citations and internal quotation marks omitted); *Khodr v. Adduci*, 697 F.Supp.2d 774, 774-75 (E.D.Mich. 2010) (finding

6

that because § 1226(c) "clearly and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court does not defer to the Board of Immigration Appeals' decision to the contrary in *Matter of Rojas*"); *Scarlett v. Dept. of Homeland Sec., ICE*, 632 F.Supp.2d 214, 219 (W.D.N.Y. 2009) (holding that § 1226(c) does not apply because the petitioner was not taken into immigration custody until more than eighteen months from the time of his release from incarceration on the underlying criminal charges); *Waffi v. Loiselle*, 527 F.Supp.2d 480, 488 (E.D.Va. 2007) (finding that § 1226(c) does not apply to an alien who was taken into immigration custody over a month after his release from state custody); *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1231 (W.D.Wash. 2004) ("[T]he Court agrees . . . that the mandatory detention statute, [§ 1226(c)], does not apply to aliens who have been taken into immigration custody several months or several years after they have been released from state custody.") (footnote omitted). *Cf. Aguilar v. Lewis*, 50 F. Supp. 2d 539, 544 (E.D.Va. 1999); *Alwaday v. Beebe*, 43 F. Supp. 2d 1130, 1133 (D.Or. 1999); *Pastor-Camarena v. Smith*, 977 F. Supp. 1415, 1416-18 (W.D.Wash. 1997) (construing IIRIRA § 303(b)(3)(A), which "is a transitional rule that temporarily suspend[ed] operation of . . . § 1226(c)(1)"); *Parfait v. Holder*, Civil No. 11-4877 (DMC), 2011 WL 4829391 at *6 (D.N.J. Oct. 11, 2011) (unpublished) (holding that because "taking the alien into custody more than two and one-half years after the alien is released does not fall within the command to take the alien into custody when the alien is released, the BIA's interpretation is contrary to the plain meaning of the statute"); *Beckford v. Aviles*, Civil Action No. 10-2035 (JLL), 2011 WL 3515933 at *7-9 (D.N.J. Aug. 9, 2011) (unpublished) (rejecting reasoning of *Matter of Rojas* and finding that the phrase "when the alien is released" is unambiguous and held that an alien who was taken into immigration custody nearly three years after he was released from incarceration was not subject to mandatory

detention under § 1226(c)(1)); *Keo v. Lucero*, No. 1:11cv614, 2011 WL 2746182 *3-5 (E.D. Va. July 13, 2011) (unpublished) (holding that § 1226(c) does not apply when alien was released from incarceration eight years prior to being detained for removal proceedings); *Sylvain v. Holder*, Civil No. 11-3006 (JAP), 2011 WL 2580506 at *7 (D.N.J. June 28, 2011) (unpublished)  (holding that § 1226(c) does not apply when alien was released from incarceration four years prior to being detained for removal proceedings); *Dang v. Lowe*, Civil No. 1:CV-10-0446, 2010 WL 2044634 (M.D.Pa. May 20, 2010) (unpublished) (same interpretation of § 1226(c)); *Bromfield v. Clark*, No. C06-757RSM, 2007 WL 527511 at *4-5 (W.D. Wash. Feb. 14, 2007) (unpublished); *Boonkue v. Ridge*, No. CV 04-566-PA, 2004 WL 1146525 at *2 (D. Or. May 7, 2004) (unpublished).

The Court finds the reasoning of these decisions to be persuasive.  As stated in *Quezada-Bucio*, "if Congress had intended for mandatory detention to apply to aliens at any time after they were released, it easily could have used the language '*after* the alien is released,' 'regardless of when the alien is released,' or other words to that effect.  Instead, Congress chose the word 'when,' which connotes a much different meaning." 317 F.Supp.2d at 1230.  The Court agrees that the word "when" in the context of release from custody means immediately upon release.  For example, when a court orders that a defendant shall serve a term of supervised release <u>when</u> the defendant is released from incarceration, the court does not mean that supervised release could start at any time after the defendant was released -- it means that the supervised release begins at the time of the release from incarceration.  As explained by the court in *Waffi*, "[t]he term 'when' includes the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun."  527 F.Supp.2d at 488 (citing 20 The Oxford English Dictionary 209 (2d ed. 1989), and The American Heritage Dictionary of the English Language (4th ed. 2000)).  The Court agrees and finds that Congress was not

ambiguous when it wrote that an alien is subject to mandatory detention "when the alien is released," and the clause "when the alien is released" means immediately after release and not "at any time after release."

Other federal district courts, on the other hand, in unpublished decisions, have held that the clause "when the alien is released" is ambiguous, and have given the BIA's decision in *Matter of Rojas* deference under the *Chevron* rationale. *See Hernandez v. Sabol*, Civil No. 1:CV-11-1064, 2011 WL 4949003 at *3 (M.D.Pa. Oct. 18, 2011) (unpublished); *Diaz v. Muller*, Civil Action No. 11-4029 (SRC), 2011 WL 3422856 at *2-3 (D.N.J. Aug 4, 2011) (unpublished); *Gomez v. Napolitano*, No. 11 Civ. 1350 (JSR), 2011 WL 2224768 at *3 (S.D.N.Y. May 31, 2011) (unpublished); *Sulayao v. Shanahan*, No. 09 Civ. 7347 (PKC), 2009 WL 3003188 at *4-6 (S.D.N.Y. Sept. 15, 2009) (unpublished); *Serrano v. Estrada*, No. 3-01-CV-1916-M, 2002 WL 485699 at *3 (N.D.Tex Mar. 6, 2002) (unpublished). The Court, however, is not bound by any of these decisions and respectfully finds that the reasoning of these cases is not persuasive. Statutory language should not be construed in a way that renders a term surplusage. *McCloy v. U.S. Dept. of Agriculture*, 351 F.3d 447, 451 (10th Cir. 2003) ("Under a long-standing canon of statutory interpretation, one should avoid construing a statute so as to render statutory language superfluous.") (citation omitted). If the term "when the alien is released" means that the Attorney General shall take into custody any aliens who have committed offenses enumerated within § 1226(c)(1)(A)-(D) without regard to the timing of that alien's release from custody, then the phrase "when the alien is released" becomes surplusage. Moreover, the reasons that justify § 1226(c) detention are "based upon the Government's concerns over the risks of flight and danger to the community" (*Demore v. Kim*, 538 U.S. 510, 531 (2003) (Kennedy, J., concurring)), and ICE can determine whether Petitioner poses a risk of flight or danger to the community through a bond hearing. In other words, by

recommending that this motion be granted, the Court is not recommending that Petitioner be released; instead, the Court is recommending that Petitioner be given a bond hearing so an immigration judge can determine whether he is a threat to the community or a flight risk, thus addressing the Congressional intent behind the statute.  For these reasons, the Court finds that § 1226(c) does not apply to Petitioner because he was not detained immediately upon release from custody.

For the reasons set forth above, the Court recommends that Petitioner should be provided an individualized bond hearing pursuant to 8 U.S.C. § 1226(a).  The Court further recommends that this hearing be provided to Petitioner **within 21 days** of these proposed findings being adopted by the Court.  If Petitioner is not given a hearing within that time period, the Court recommends that he be released pending issuance of a removal order.

<u>**RECOMMENDED DISPOSITION**</u>

For the foregoing reasons, the Court recommends that Petitioner's ***Petition For Writ Of Habeas Corpus And Immediate Release From Custody*** *(Doc. 1)* be **GRANTED** as set forth above.

_Lourdes A. Martinez_

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**